UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GARY BIRD, deceased, by and through his next friend, GREG BIRD, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 4:07CV202 SNLJ |
| JEFFERSON COUNTY SHERIFF'S DEPT., et al., ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff filed this §1983 action alleging that decedent Gary Bird's constitutional rights were violated when he was shot to death by police officers during the alleged commission of a crime. Plaintiff asserts a claim of excessive force and a state-law claim for negligence. This matter is before the Court on the remaining defendants Groat and Crews' Daubert[1] motion and motion *in limine* to exclude plaintiff's experts (#19), filed May 27, 2008. Plaintiff has filed a responsive pleading. Document #26, filed July 14, 2008. This cause of action is set for trial on the Court's trial docket of April 20, 2009.

The instant motion addresses the purported plaintiff's experts' testimony of Ray Papish, Keith Williams, and Karen Tabak. Upon review of the parties' pleadings, the submitted exhibits, and the relevant case law, the Court will grant the defendants' motion and exclude the expert

---

[1]This motion is filed as a result of the United States Supreme Court case of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) regarding the admission of expert testimony.

testimony and reports of Ray Papish but will deny the motion as to Keith Williams and Karen Tabak.

For the purposes of this motion, the facts of this case are summarized as follows:

On or about March 19, 2005, decedent Gary Bird was involved in a high-speed police chase due to alleged traffic violations. After a lengthy pursuit, Bird pulled over onto a gravel shoulder but did not get out of the car as directed by one or more of the defendants. According to police accounts, decedent Bird allegedly backed his car into one of the police cruisers and then attempted to run down one of the defendants who had exited his police cruiser. Defendants then shot at decedent Bird, killing him. According to plaintiff's account, "Defendants forced decedent off the road and opened fire upon [him]...."

Plaintiff offers two alleged experts concerning the propriety of defendants' use of deadly force: Ray Papish and Keith Williams. Defendants contend that these persons lack the experience and credentials to testify as experts regarding the use of deadly force by law enforcement officials.

The defendants' challenge is pursuant to Rule 702 Fed.R.Civ.P.; as well as <u>Daubert</u>. *supra.* and its progeny. Rule 702 provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise if (1) it is based upon sufficient facts or data; (2) it is the product of reliable principles and methods; and (3) the expert has applied the principles and methods reliably to the facts of the case.

Rule 702 allows for the admission of expert testimony from a wide range of fields of expertise; however, it provides a safeguard to prevent confusing a jury with so-called "junk science" by building in a reliability factor. Smith v. Cangieter, 462 F.3d., 920, 923 (8th Cir. 2006).

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993) the Court focused on the admissibility of scientific expert testimony and discussed certain specific factors that would be helpful in determining the reliability of a particular scientific theory or technique. The Court determined in Daubert that the trial judge has a "gatekeeping" obligation to determine whether expert testimony is admissible under Rule 702.

Then in Kumho Tire Company, Ltd., et al. v. Carmichael, et al., 526 U.S. 137 (1999), the Court concluded that Daubert's holding setting forth the trial judge's general gatekeeping obligation, applies not only to testimony based on scientific knowledge but also to testimony based on technical and other specialized knowledge. Thus, the gatekeeping duty applies to all expert testimony.

Factors enumerated by Daubert that should be considered by the reviewing court are: 1) whether the theory or technique can be (and has been) tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) whether the theory or technique has a known or potential rate of error and standards controlling the technique's operation; and 4) whether the theory or technique is generally accepted in the scientific community. Pro Service Automotive, et al. v. Lenan Corp., 469 F.3d. 1210, 1215, *citing* Daubert, 509 U.S. at 592-94.

The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. Lauzon v. Senco Prods., Inc., 270 F.3d. 681, 686 (8th Cir. 2001). Courts have broad discretion regarding the admissibility of expert testimony, and "[a] review of the case law

after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Robinson v. Geico General Ins. Co., 447 F.3d. 1096, 1100 (8th Cir. 2006); McIntosh v. Monsanto Co., 462 F.Supp.2d. 1025, 1032 (E.D.Mo. 2006). Generally, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Robinson, at 1100 *quoting* Daubert, 509 U.S. at 595; McIntosh, at 1032 *quoting* Daubert, *supra.* "Gaps in an expert witness' qualifications or knowledge generally go to the weight of the witness' testimony, not its admissibility." Robinson, at 1100. However, the reviewing court should not admit evidence that is "connected to existing data only by the *ipse dixit* of the expert." Pro Service Automotive, at 1215-16; Smith v. Cangieter, at 924 *quoting* General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997).

## **Ray Papish**

This case raises issues concerning the use of deadly force. Defendants contend that Mr. Papish lacks the credentials to testify as an expert in the use of force, especially the use of deadly force, they further contend that his "opinions" are nothing more than conjectures and speculations as to what he believes happened on March 19, 2005. Plaintiff responds that Mr. Papish's "expertise" gained from his many years as a former law enforcement officer "will aid the jury in evaluating the crime scene", but denies that Mr. Papish's testimony and report are being offered as expert testimony in the "use of force".

It is perhaps enough reason to preclude Mr. Papish's testimony simply because plaintiff fails to explain why Mr. Papish's testimony is necessary to assist a jury in understanding the evidence or a fact in issue. But in addition, there is little or nothing in his resume that

4

demonstrates a particularized knowledge of crime scene investigation. For the last thirteen (13) years he has worked as a private investigator mainly regarding allegedly fraudulent insurance claims and as a background investigator for a technological company. Prior to that he worked some 25 years as a police officer, the last 23 years with the Overland Police Department. During that time he served as a patrol officer and as a detective, including 15 years as an investigator, as needed, for the Major Case Squad. He also served for a year and a half as the officer assigned to investigating police misconduct.

His resume does not indicate that as a police officer he was trained as a crime scene investigator or in the field of crime scene reenactment and/or accident reconstruction. There is no indication that he ever provided instruction or training to other officers in the use of force, especially in connection with a vehicle pursuit. Furthermore, Papish has never investigated a single incident involving an officer-related shooting, much less an officer-related shooting in connection with a vehicle pursuit. Defendants' Exhibit B (Deposition of Ray Papish), pg. 26.

Furthermore, Mr. Papish's educational credentials do not support his claim of special expertise. Papish states that he got an Associate Degree in the Administration of Justice from the St. Louis Community College[2] sometime in the mid-to-late 1980s. Defendants' Exhibit B, pg. 6. He then obtained a Bachelor of Science degree in Criminal Justice Management through extension courses offered by (now defunct) Tarkio College. Defendants' Exhibit B, pg. 7. He then took general training at the Greater St. Louis Police Academy to become a police officer. As a police officer he taught classes part-time at the Academy in defensive driving; and has taught classes for the Overland Police Department on department policy, rules and regulations.

---

[2]Defendants incorrectly refer to "St. Louis University College".

Defendants' Exhibit B, pg. 12. He could not recall what type of classes he took through the FBI. Defendants' Exhibit B, pg. 10. But again, none of this is any indication of a special expertise in crime scene investigation, reenactment or reconstruction.

Mr. Papish cannot recall any instance wherein he has been recognized by a court as an expert in any area of law enforcement. Defendants' Exhibit B, pg. 31. He has never before investigated and rendered an opinion, expert or otherwise, in a police-related shooting. There is nothing in his report or deposition that provides an explanation or any link between his past experiences as a police officer and insurance fraud investigator and/or background investigator with the speculations and conclusions he reaches as to what occurred on March 19, 2005. There is nothing in his resume or deposition that provides any educational or field training to support his speculations and conclusions. Mr. Papish lacks the credentials and training to provide expert testimony regarding crime scene evaluation, expert testimony as to the use of deadly force by law enforcement officials, and/or the lack of training in the use of deadly force by law enforcement officials.

As a final note, although plaintiff avers that Mr. Papish is not being offered as an expert in the use of force, his report is saturated with statements, speculations, and/or conclusions regarding the defendants' use of force and the alleged lack of proper training. The Court has reviewed Mr. Papish's report, and the examples proffered by the defendants' in their motion, and concurs that in many instances Mr. Papish is invading the purview of the Court by offering legal conclusions, and invading the purview of the jury by speculating as to the mind set of Gary Bird and the defendants as the events in question took place. For example, the statement "[T]he officers claim that in driving Highway MM there are numerous blind spots. This is being used to

add 'danger' to the situation and give substance to the end result." Defendants' Exhibit C (Papish Report), pg. 3. This is sheer speculation and should be left to a jury to consider upon reviewing the evidence of the alleged incident. Another example of gross speculation, is the statement "[B]ird then supposedly backs up into Groat's police car and Thomas claims it is Bird's intention to push Groat's car backwards. A mid-sized BMW trying to push a Chevrolet Impala backward? This is not going to happen and I am sure Bird would know this, especially since his car has rear wheeled drive." Defendants' Exhibit C, pg. 6. An example of legal conclusions drawn by Mr. Papish is the statement "[T]he Deputies did not follow department policy that outlines officer's rights and obligations to fire their weapons." Defendants' Exhibit C, pg. 17. All in all, despite not being offered as an expert in the use of force and/or training of police officers in the use of force, Mr. Papish offers many opinions as to why he believes the defendants' use of force was unreasonable, and those opinions appear to be based largely on conjecture, speculation, and unsupported conclusions.[3]

## Keith Williams

Defendants first challenge Mr. Williams' educational credentials in support of his expertise. His numerous "degrees" apparently have all been obtained via the Internet from two unaccredited "colleges": Trinity College and University (London, England) and Kennedy Western University (Los Angeles, California). Plaintiff does not dispute the suspicious nature of

---

[3]Although not raised by defendants, the Court was particularly troubled by Mr. Papish's "interpretation" of the Medical Examiner's findings. For example, after citing the M.E.'s findings regarding the bullet wounds to the scalp, Papish states "[I] would think Bird had just driven past the officers and may have been 'ducking' a bit when he was struck in the side of the head and that the bullet traveled rear to front." Defendants' Exhibit C., pg. 10. There is nothing in his educational or experiential background which remotely provides Mr. Papish with the credentials to give an opinion, expert or otherwise, interpreting the medical findings.

these "degrees". Instead, plaintiff simply offers Mr. Williams' testimony as an expert in "police practices," emphasizing his law enforcement background and averring that he has been designated before as a "use of force" expert in other trials.

Defendants concede that Mr. Williams has had experience involving training in the use of force, but they also point out that the bulk of his training was with the St. Louis City Police Department in the early 1990s. *See*, Defendants' Exhibit F (Deposition of Keith Williams), pgs. 21-23. And in fact, the record also shows that the bulk of his training was not in connection with the use of firearms; i.e., situations involving the discharge of a weapon. Defendants' Exhibit F, pg. 29. Mr. Williams also spent four years as the Assistant Director of the Missouri Police Corp (2000-2004),[4] but it is unclear from Mr. Williams' deposition testimony the nature of his involvement with the Corp. He was not a firearms instructor, but rather it appears he provided training in "reasonable alternatives to the use of deadly force." Defendants' Exhibit F, pgs. 29-31.

Although plaintiff avers that Mr. Williams has testified as a use of force expert in other trials, he provides few details as to these other cases and in what capacity Mr. Williams testified. According to Mr. Williams' deposition testimony, all three cases in which he has testified, he testified as to the use of an "impact weapon"[5]. However, Mr. Williams has never been involved

---

[4]The Missouri Police Corp. was primarily involved in the training of college graduates for careers in law enforcement. It was an intense "boot camp" training program for future police officers. Defendants' Exhibit F, pg. 15. It was dissolved in 2005.

[5]None of the parties, nor does Mr. Williams, explain what exactly constitutes an "impact weapon". However, Mr. Williams does state that in the case of Gregory Bell v. City of St. Louis, the "impact weapon" was an expandable baton. Defendants' Exhibit F, pgs. 34-35. Therefore, the Court must assume that an "impact weapon" is an instrument capable of bodily injury through direct contact with the body.

8

in a shooting incident, has never investigated a shooting incident, and has never testified as an expert in a police-related shooting case. Defendants' Exhibit F, pgs. 34-36.

All that said, Mr. Williams appears to be sufficiently qualified to testify as a use of force expert in this case. Mr. Williams' occupation is a law enforcement trainer, and in that capacity he has trained hundreds of officers on the proper use of force in police emergencies. One component of that training was a concern about "situations where officers were shooting at moving cars...why officers are shooting at cars, and what can we do to avoid that." Defendants' Exhibit F (Deposition of Keith Williams), pg. 30. Mr. Williams then explained, "That's when the reasonable alternatives doctrine was really cultivated. So in the course of my training we discussed that we had the video vignettes of it showing officers in situations where cars would be moving away from them, what is your response...." Id. Given this experience in the training of other officers, Mr. Williams may testify as an expert. However, his opinions may well be subject to the same objections as those made against Mr. Papish to the extent that they amount to speculation and conjecture, but the Court will reserve ruling on these matters.

## Karen Tabak

Defendants do not challenge the credentials of Dr. Tabak. Instead, they seek to exclude her testimony as to her conclusions regarding Gary Bird's earnings, especially as to loss earnings. Defendants contend that plaintiff, despite discovery requests, failed to provide them with any information whatsoever regarding Gary Bird's earnings, if any, for the years 2001, 2002, 2003, 2004, and 2005. Pursuant to a written request for such financial information, plaintiff responded that he was "without sufficient knowledge to execute a fully satisfactory answer at this time and therefore reserves the right to supplement this answer at a later date." Defendants' Exhibit I

9

(Plaintiff's Answers to Defendant Terry Thomas' First Set of Interrogatories, No. 11). Defendants aver that plaintiff, as of the date of the instant motion, has failed to supplement this discovery answer.

Plaintiff claims that Dr. Tabak has the credentials and expertise to assess Gary Bird's future earnings/benefits. He contends that he "has provided Defendant with all of the tax returns Plaintiff has in their possession for which Dr. Tabak based her conclusion." Plaintiff further notes that defendants had the opportunity to depose Dr. Tabak to further discuss the facts upon which she based her conclusions, but chose not to do so.

Dr. Tabak's qualifications to testify as an expert are not in dispute. Defendants seek to exclude her testimony because of plaintiff's failure to provide them with certain tax returns. Plaintiff asserts that all discovery upon which Dr. Tabak based her report was provided to the defendants. Thus, it is unclear to the Court why the allegedly missing tax returns from 2001-2005 are significant here. The Court agrees with plaintiff that if defendants believed these missing tax returns are important to the computation of Gary Bird's future earnings or believed that Dr. Tabak's conclusions were based in part on these missing tax returns, then they had every opportunity to depose her.[6] Their failure to inquire further into the factual basis for her conclusions via deposition is not grounds to strike her testimony. Furthermore, any such gaps in earning years are subject to cross-examination at trial and are for the jury to consider. The Court

---

[6]If plaintiff does indeed possess these subject tax returns and failed to provide copies of same to defendants, or provided copies of same to Dr. Tabak for use in her report without so providing same to defendants, then defendants may again move to exclude her testimony and for sanctions.

will not strike or exclude Dr. Tabak's expert testimony on the matter of Gary Bird's lost earnings.

## Conclusion

In conclusion, the Court will grant the instant motion as to Ray Papish, however, the instant motion will be denied as to Keith Williams and Karen Tabak.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Daubert motion and motion *in limine* (#19) be and is **GRANTED IN PART** as to Ray Papish and **DENIED IN PART** as to Keith Williams and Karen Tabak.

Dated this 25th day of March, 2009.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE