UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GARY BIRD, deceased, by and through, his next friend, GREG BIRD,<br><br>    Plaintiff,<br><br>vs.<br><br>JEFFERSON COUNTY SHERIFF'S DEPARTMENT, ET. AL.,<br><br>    Defendants. | Case No. 4:07CV202SNLJ |

## MEMORANDUM

Plaintiff has filed this §1983 action alleging that decedent's civil rights were violated when he was shot and killed by a deputy or deputies of the Jefferson County Sheriff's Department after a high-speed motor vehicle chase. This matter is before the Court on the remaining defendants Tim Groat and Drew Crews' motion for summary judgment (#22), filed June 9, 2008. Responsive pleadings have been filed. This cause of action is on the Court's trial docket of April 20, 2009.

### I.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, the court must review the facts in the light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems,

Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

Given the confusing nature of the plaintiff's first amended complaint, and the substance of the instant motion which fails to provide any material facts, uncontradicted or not, regarding the events of March 19, 2005, it is difficult for the Court to clearly ascertain the facts in this case; however, the following is a summary that will set context for this motion:

On or about March 19, 2005, decedent Gary Bird was involved in a high-speed police chase due to alleged traffic violations. After a lengthy pursuit, Bird pulled over onto a gravel shoulder but did not get out of the car as directed by one or more of the defendants. According to police accounts, decedent Bird allegedly backed his car into one of the police cruisers and then attempted to run down one of the defendants who had exited his police cruiser. Defendants then shot at decedent Bird, killing him. According to plaintiff's account, "Defendants forced decedent off the road and opened fire upon [him]...."

Defendants' summary judgment motion essentially is predicated on a single issue: that defendants have only been sued in their "official capacity," thus, plaintiff's claims are solely against their governmental employer, Jefferson County, although the Jefferson County Sheriff has previously been dismissed from the case.[1] As such, plaintiff must set forth and prove a claim under the municipal liability doctrine. Under that doctrine, a plaintiff seeking to hold a municipality liable in a §1983 action for deprivation of a federally secured right caused by a municipal employee "is required to identify either an official municipal policy or a widespread

---

[1] Inexplicably, plaintiff has failed to join Jefferson County as a party defendant.

3

custom or practice that caused plaintiff's injury." Springdale Education Association v. Springdale School District, 133 F.3d. 649, 658 (8th Cir. 1998). Defendants' assert that such a claim does not exist. Defendants further contend that Count III of the amended complaint must be dismissed as moot because it is only lodged against (former) defendant Sheriff Oliver "Glenn" Boyer who was previously dismissed out of this case.

The Court has carefully reviewed the instant motion and memoranda in support and in opposition, all responsive pleadings, all exhibits filed in support and opposition, and the relevant case law, and determines that defendants Groat and Crews have been sued only in their official capacity as to Counts I and II. Furthermore, plaintiff has failed to provide adequate substantive evidence from which any reasonable juror could conclude that Jefferson County had a policy, custom or practice encouraging excessive and/or deadly force in a situation wherein an officer does not have reason to fear for his or another officer's life. Furthermore, plaintiff has failed to set forth affirmative evidence from which any reasonable juror could conclude that Jefferson County failed to properly train its police officers, including defendants, in the use of deadly force. Finally, the Court finds that Count III is not addressed to defendants Groat and Crews, but is addressed solely to defendant Boyer and the other named defendants who have previously been dismissed from this lawsuit. Therefore, Court III must be dismissed as moot.

## II.

### A.

Public servants, such as police officers, may be sued under §1983 in either their official capacity, their individual capacity, or both. Johnson v. Outboard Marine Corporation, 172 F.3d. 531, 535 (8th Cir. 1999); Lopez-Buric v. Notch, et. al., 168 F.Supp.2d. 1046, 1049 (D.Minn. 2001). In actions against police officers, a plaintiff must specifically plead individual capacity in order to put

4

the police officer (or any other public servant) on notice of personal liability. Andrus v, Arkansas, 197 F.3d. 953 (8th Cir. 1999). In order to sue a public servant (or in this case, individual police officers) in his/her individual capacity, "a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity.". Johnson, at 535 *citing* Artis v. Francis-Howell North Band Booster Ass'n, Inc., 161 F.3d. 1178, 1182 (8th Cir. 1998); Lansdown v. Chadwick, 152 F.Supp.2d. 1128, 1137-38 (W.D.Ark. 2000) *aff'd* 258 F.3d. 754 (8th Cir. 2001). In order to meet this pleading requirement, a §1983 plaintiff need only to state somewhere in the complaint that the plaintiff "sues each and all defendants in both their individual and official capacities." Lopez-Buric, at 1050 *quoting* Nix v. Norman, 879 F.2d. 429, 431 (8th Cir. 1989). Absent such an express statement, the suit is construed as being against the public servant defendants/law enforcement defendants in their official capacity; and as such, it is merely a suit against their governmental employer itself. Bankhead v. Knickrehm, 360 F.3d. 839, 844 (8th Cir. 2004); Johnson, at 535; Lopez-Buric, at 1049.

In Counts I and II, plaintiff has failed to include any language in his complaint evidencing a clear and unambiguous intent to sue defendants Groat and Crews in their individual capacities. Although the caption identifies each of these defendants and states "Individually," the amended complaint states expressly in ¶4 that at all times mentioned defendants Groat and Crews "are sued in their *official capacity* as individuals comprising the Jefferson County Sheriff's Department...." (emphasis added). Furthermore, the amended complaint in ¶6 refers to these defendants only in their capacity as "members of the Jefferson County Sheriff's Department" and as "officers of the Jefferson County Sheriff's Department." Count I, entitled "Civil Rights Violations," asserts that Gary Bird's death was the result of "Defendant's[2] agency, servants, and employees in that Deputy Tim Groat,

---

[2]The Court presumes that this is referencing Jefferson County Sheriff's Department.

Deputy Drew Crews ... negligently used deadly force . . ." Count II is entitled "Negligence Per Se," but is a convoluted claim of negligence based upon alleged Missouri statutory and federal constitutional violations, including a claim that defendant had a "custom or policy of negligently failing to train officers in the use of deadly force and providing inadequate instruction in the use of deadly force." In short, there is nothing in the body of Count I or Count II expressly stating that defendants Groat and Crews are being sued in their individual capacities. Despite plaintiff's protestations to the contrary, the complaint speaks for itself, and accordingly, this Court finds that defendants Groat and Crews are being sued in their official capacities only.[3]

**B.**

As to Count I, it remains to be determined whether plaintiff has made an actionable case against defendants Groat and Crews in their official capacities, which would impose liability on their employer, Jefferson County. In general, a governmental entity may not be held liable for the alleged unconstitutional acts of its employees under the doctrine of *respondeat superior*. Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). Liability under §1983 for a governmental entity must be based upon an official custom, policy, or practice of the entity that causes the constitutional deprivation. Monell v. New York City Department of Social Services, 436 U.S. at 690-94; Davison v. City of Minneapolis, Minnesota, 490 F.3d. 648 (8th Cir. 2007); Granda v. City of St. Louis, 472 F.3d. 565, 568 (8th Cir. 2007); Avalos v. City of Glenwood, 382 F.3d. 792, 802 (8th Cir. 2004). Alternatively, the deprivation liability can be based on the fact that is so pervasive among non-policymaking employees of the municipality so "as to constitute a custom or usage with the force of law." Granda, at 568 *quoting* Kuha v. City of Minnetonka, 365 F.3d. 590,

---

[3]This Court notes that despite the extended arguments on this issue, plaintiff has not sought leave to amend the complaint to allege the defendants' individual liability in Counts I and II.

603 (8th Cir. 2003). Liability will not attach simply because the municipality employs the alleged tort-feasor. Monell, 436 U.S. at 694.

"Municipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability." Russell v. Hennepin County, 420 F.3d. 841, 846 (8th Cir. 2005) *quoting* Angarita v. St. Louis County, 981 1537, 1546 (8th Cir. 1992)(*citing* St. Louis v. Praprotnik, 485 U.S. 112, 121-22 (1988)). Although proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, *see,* Davison, *supra.*, *citing* Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985), "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." Davison, *supra.*, *quoting* Praprotnik, 485 U.S. at 123; *see*, Angarita, at 1546.

"Claims against a municipality based on the acts of an individual officer or entity instead of a written policy or code have succeeded in circumstances where the action was not `subject to significant review' because the officer was in a `policymaking position . . . represent[ing] the official policy of the municipality.'" Granda, at 568 *quoting* McGautha v. Jackson County Collections Dept., 36 F.3d. 53, 56 (8th Cir. 1994). However, before a municipality can be held liable, there must be an unconstitutional act committed by the municipal employee or official. Russell, at 846; Avalos, at 802. A municipality is not liable under §1983 for the negligent acts of its employees/officials. Russell, at 846 *citing* Daniels v. Williams, 474 U.S. 327, 330-31 (1986); *see also*, Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 405 (1997).

"A 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible [under state law] for establishing final policy with respect to the subject matter in question.'" Russell, at 847 *quoting* Hayes v. Faulkner County, 388

7

F.3d. 669, 674 (8th Cir. 2004)(*quoting* Pembaur, 475 U.S. at 483-84). "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." Russell, at 847 (citation omitted).

If the alleged constitutional violator is not a "final policymaker," then liability may be established by showing that the alleged misconduct was so persistent among the rank-and-file employees of the municipality as to constitute a "custom" with the "force of law." "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled . . as to [have] the force of law.'" Russell, at 849 *quoting* Harris v. City of Pagedale, 821 F.2d. 499, 504, n7 (8th Cir. 1987)(*quoting* Monell, 436 U.S. at 691). In order to establish a constitutional violation resulting from a municipal custom, a plaintiff must show that his/her alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized. Russell, at 849 *citing* Larson v. Miller, 76 F.3d. 1446, 1453 (8th Cir. 1996)(en banc). Central to this standard is that the alleged misconduct must result in "pervasive constitutional violations;" thus, liability for an unconstitutional custom or practice cannot arise from a single act. McGautha, at 56-57 (citations omitted).

In this case, plaintiff makes numerous conclusions and unsubstantiated statements that the County was deliberately indifferent to the use of deadly force because the Sheriff's Department failed to retain the services of an outside agency to conduct a post-shooting investigation and failed to reprimand the officers for "their clear failure to observe the liberty interests of the defendant."[4] Plaintiff then refers to "other post-incident evidence" as pervasive proof of Jefferson County's deliberate indifference, and that "[T]he plaintiffs will thus be able to show that the County's policy

---

[4]The Court presumes that plaintiff meant to say "decedent" and not "defendant".

of inadequately investigating officer-involved shootings and its failure to discipline the officers involved led the defendant deputies to believe their unconstitutional actions with respect to the decedent would go unpunished." Document #29, pg5. Plaintiff further states "[A]lso, Plaintiff will be able to produce evidence that Jefferson County's complaint history includes numerous allegations of constitutional violations, none of which were produced to the plaintiff." Document #29, pg. 6.

However, plaintiff has failed to produce any affirmative evidence in support of his allegations in order to successfully challenge the summary judgment motion as is applies to the official capacity claims. He refers the Court constantly to his "experts' reports," but the proposed testimony of witness Papish has been stricken pursuant to a Daubert motion, and the report and testimony of witness Williams pertains not to the custom and policy issue or the lack of training issue at hand, but instead, to the proof of defendants Groat and Crews' unauthorized use of force. Although Williams' report concludes in passing with the lone, conclusory remark that "I believe that a clear lack of adequate training is at issue in the scenario involving the shooting resulting in the death of Gary Bird," even that remark is belied by the fact that Williams relied extensively on the Jefferson County Sheriff's Department's established procedures and protocols on vehicle pursuit and use of force in condemning Deputies Groat and Crews.

The Court also notes that plaintiff has attached to his response an unauthenticated copy of a portion of a deposition with an unidentified deponent. Plaintiff's Exhibit 2 (attached to Document #29), but this "exhibit" has no identification as to when the deposition was taken, in what case the deposition was taken, who the deponent is, and who is questioning the deponent. Consequently, it is not properly identified and/or authenticated, thus it is inadmissible and will not be considered by the Court.

Finally, plaintiff supposedly has "evidence" that it would have submitted at trial; however, in order to successfully challenge a summary judgment motion, all evidence must be submitted now for the Court to consider. Plaintiff may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. Instead, the plaintiff must substantiate his allegations with sufficient probative evidence that would allow a jury to find in his favor on more than just speculation or conjecture. Moody v. St. Charles County, 23 F.3d. 1410, 1412 (8th Cir. 1994).

Plaintiff has provided no affirmative evidence that there existed a continuing, widespread, persistent pattern of unconstitutional use of excessive and/or deadly force by the Jefferson County Sheriff's Department deputies that was known by the Department policy-makers, but deliberately ignored. Moreover, plaintiff has failed to produce any evidence from which a reasonable juror could find that the defendants' actions were the direct result of an official municipal policy or custom. In fact, plaintiff has alleged only a single incident of deadly force by these deputies. A single incident of law enforcement misconduct cannot form the basis for imposing liability on the government employer. Oklahoma City v. Tuttle, 471 U.S. 808 (1985); Mettler v. Whitledge, 165 F.3d. 1197, 1205 (8th Cir. 1999); Mosley v. Reeves, 99 F.Supp.2d. 1048, 1054 (E.D.Mo. 2000). In sum, this Court finds that plaintiff has presented no affirmative evidence that would give any reasonable juror cause to impose liability on the part of Jefferson County for the actions of these defendant deputies. Regarding the failure to train claim, plaintiff must show that the government entity's lack of training amounts to deliberate indifference to the rights of the public who come in contact with the government entity's employees, that a deliberate choice was made regarding this lack of training, that it would have been obvious to reasonable decision-makers that this lack of adequate training would result in constitutional violations, and that there was a causal connection

between this lack of training and the plaintiff's injury. Canton v. Harris, 489 U.S. 378 (1989). A plaintiff can show deliberate indifference from evidence of decisionmakers' continued adherence to a training program they knew or should have known to be deficient in preventing employees' unconstitutional/tortious conduct. Ward v. City of Des Moines, 184 F.Supp.2d. 892, 898 (S.D.Iowa 2002) *citing* Brown, 520 U.S. at 407. A plaintiff can also establish liability by showing a pattern of tortious conduct by inadequately training employees which may indicate that a lack of proper training, as opposed to a single negligent administration of the training program, or "factors peculiar to the officer involved in the incident, is the moving force behind the plaintiff's injury." Ward, at 898 *citing* Brown, 520 U.S. at 407-08; *see also*, Smith v. Watkins, 159 F.3d. 1137, 1138-39 (8th Cir. 1998).

Here, plaintiff has provided no evidence of deficiencies in the Jefferson County Sheriff's Department training program, especially with regard to the use of deadly force in connection with high-speed pursuits. He has failed to provide any evidence of special training needs or a pattern of tortious conduct by inadequately trained officers indicating a lack of proper training for the use of deadly force in situations as is alleged in this lawsuit. Again, plaintiff has shown only a single incident of an alleged violation of federal rights. A single incident does not alone permit an inference of municipal culpability and causation unless accompanied by a showing that the municipality failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. Ward, at 898-99 *citing* Brown, 520 U.S. at 408. Plaintiff has not presented such evidence. In summary, plaintiff has not presented any evidence highlighting any deficiencies in the training program.

For the foregoing reasons, defendants are entitled to summary judgment on Count I as a matter of law.

## C.

The Court agrees with defendants that the substantive nature of Count II is unclear. It is clearly titled as a negligence action; however, it makes reference to various constitutional provisions that appear to be a foundation for the negligence claim. Plaintiff's constitutional claim for negligence must fail because negligence, even gross negligence, is not actionable under §1983. Daniels v. Williams, 474 U.S. 327 (1986); Sellers by and Through Sellers v. Baer, 28 F.3d. 895, 902-03 (8th Cir. 1994); Davis v. Hall, 992 F.2d. 151, 153 (8th Cir. 1993); Roach v. City of Fredericktown, Missouri, 882 F.2d. 294, 297 (8th Cir. 1989).

To the extent Count II can be characterized simply as a common law negligence claim under state law, the claim still fails. Jefferson County is entitled to sovereign immunity under Sec. 537.600 R.S.Mo. 2004 in all cases except those involving injuries directly resulting from the negligent act of a public employee arising out of the operation of a motor vehicle, or for injuries caused by the condition of a public entity's property – exceptions that have no application here. Plaintiff correctly points out that a third exception to sovereign immunity exists where the governmental entity has acquired liability insurance to cover the injuries in question, see Section 71.185 R.S.Mo. 2000, but he has provided no evidence that Jefferson County has procured such insurance. Furthermore, because Deputies Groat and Crews have been sued only in their official capacity, the claims against them are treated as if they were brought against the County, and they, too, have the benefit of sovereign immunity. As stated in Betts-Lucas v. Hartmann, 87 S.W.3d. 310 (Mo. App. 2002), "Sovereign immunity, if not waived, bars suits against employees in their official capacity, as such suits are essentially direct claims [against the public entity]." Id., at 327 (citing Edwards v. McNeill, 894 S.W.2d. 678, 682 (Mo. App. 1995).

For the foregoing reasons, defendants are also entitled to summary judgment on Count II as a matter of law.[5]

**D.**

Finally, defendants claim that Count III should be dismissed because it is directed solely to defendant Boyer, who was previously dismissed. Plaintiff responds that all defendants, including Groat and Crews, are sued in Count III in their individual capacities "and that Count remains answerable by Jefferson County in regard to the defendants in both capacities." Document #29, pg. 10.

Count III is couched in terms that pertain only to liability of defendants in their official capacities, and it is captioned "**CIVIL RIGHTS VIOLATIONS BY DEFENDANT BOYER,**" a reference to the ultimate official involved. Nonetheless, Count III states that defendants are liable "in their individual capacity" for tolerating and permitting a custom and practice of unauthorized use of deadly force and asserts that the Jefferson County Sheriff's Department inadequately trained individual defendants, including Groat and Crews, in the use of deadly force. Defendants' liability in these respects, however, is more in the nature of official liability, rather than individual liability.

In any event, on or about May 29, 2008 the parties filed a joint stipulation in which they "stipulate and agree that the claims against Defendants the Jefferson County Sheriff' Department, Sheriff Oliver Glenn Boyer, Lieutenant Terry Thomas, and Deputy Jeff Sengheiser may be dismissed with prejudice . . ." Document #21. This Stipulation was granted by the Court on August 12, 2008. *See*, Court Order #32. Therefore, because there was no particularized notation as to specific claims,

---

[5]As with Count I, this Count notes that despite extended arguments on the characterization of this claim, plaintiff has not sought leave to amend to cure the deficiencies.

**all** claims against the defendants named in the Stipulation were dismissed with prejudice. Thus, the only possible defendants still subject to liability under Count III are defendants Groat and Crews.

But therein lies the problem. The only paragraph in Count III that is addressed to individual defendants, as opposed to defendant Jefferson County Sheriff's Department, alone, is paragraph 34, but that paragraph does not purport to apply to the individual actions of defendants Groat and Crews. Paragraph 34 states:

> Upon information and belief, defendants, in their individual capacity, with knowledge and deliberate indifference to and/or reckless disregard for the rights of the citizens of Jefferson County, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of Jefferson County Sheriff's Department personnel of unjustified, unreasonable and illegal use of excessive force, including deadly force.

This paragraph, which plaintiff relies upon exclusively in his memorandum in opposition, is not addressed to the underlying allegations of defendants Groat and Crews' unauthorized use of force. It is addressed instead to those other individual defendants who "tolerated, permitted, failed to correct, promoted and ratified a custom, pattern and practice" that resulted in the alleged unauthorized use of force by defendants Groat and Crews. After all, Groat and Crews, themselves, cannot be said to have "tolerated, permitted, failed to correct, promoted and ratified" the unlawful customs, patterns or practices in which they engaged. That is conduct that necessarily must have been undertaken by their superiors, and the Sheriff in particular, before it can support a cause of action.

For these reasons, defendants are also entitled to summary judgment on Count III as a matter of law.[6]

## III.

In conclusion, defendants are entitled to summary judgment on all counts.

Dated this 25th day of March, 2009.

                         _/s/ Stephen N. Limbaugh, Jr._
                         STEPHEN N. LIMBAUGH, JR.
                         UNITED STATES DISTRICT JUDGE

---

[6] Once again, this Count notes that despite extended arguments on the characterization of this claim, plaintiff has not sought leave to amend to cure the deficiencies.